In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00331-CV

_____

IN RE TEXAS WINDSTORM INSURANCE ASSOCIATION, BRUSH COUNTRY CLAIMS, LTD, AND DAVID GUTIERREZ

_____

Original Proceeding
60th District Court of Jefferson County, Texas
Trial Cause No. B-183,464

_____

MEMORANDUM OPINION

In this mandamus proceeding, the relators, Texas Windstorm Insurance Association, Brush Country Claims, LTD, and David Gutierrez, contend that the trial court abused its discretion by compelling the relators to produce all photographs and damage estimates on Hurricane Rita claims that they adjusted or investigated on property located within a one mile radius of the property that is the subject of the unfair claims settlement suit. We stayed the trial court's discovery order and requested a response from the real parties in interest, David James and

Sue James. The Jameses argue that the documents would likely include a significant number of homes similar in age and construction to their home and that it would be reasonable to expect that other houses in the immediate vicinity would have been subjected to wind and rain of similar intensity for a similar time period, and the homes would have sustained similar interior water damage. After reviewing the petition and the response, we conditionally grant mandamus relief.

Discovery requests must not be overbroad. *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding). "'[O]verbroad requests for irrelevant information are improper whether they are burdensome or not.'" *Id.* (quoting *In Re Allstate Cnty. Mut. Ins. Co.*, 227 S.W.3d 667, 670 (Tex. 2007) (orig. proceeding)). In *National Lloyds*, the plaintiff alleged her homeowner's insurer undervalued her claims for damage to her Cedar Hill home caused by two storms. *Id.* at 487–88. The Texas Supreme Court concluded that the trial court abused its discretion by compelling production of claims files by the adjusting firms on other Cedar Hill homes damaged in the same storms. *Id.* at 489–90. The Court held that the insurer's evaluation of other homes that were damaged in the same storms would provide no relevant information to support the plaintiff's claims that her claim had been undervalued. *Id.* at 489. The Court explained that scouring claims files for similarly situated claimants was at best an impermissible fishing

2

expedition, especially considering the many variables associated with a particular claim. *Id.*

In an attempt to distinguish *National Lloyds*, the Jameses submitted supplemental affidavits from their experts. Both experts stated that it would be "beneficial . . . to review historical photographs and estimates of real property damaged by Hurricane Rita within a one mile radius of the Property[.]" Both of the Jameses' experts opined that "[s]uch information, photos, and data would be reliable, credible and objectively verifiable evidence" for [them] to review in order to render opinions and conclusions . . . regarding the extent and severity of damage sustained by the Property[.]"

However, the lack of relevance of the requested discovery is illustrated by the initial report of one of the Jameses' experts, Gregory Becker of Becker Engineering, Ltd. In this report, Becker explained that neighboring structures would experience different wind speeds:

> Downbursts (microbursts) and tornados within the hurricane bands gust at speeds much higher than the measured wind speeds at any particular monitoring station. Highly variable winds, such as tornados and downbursts, are likely responsible for a particular structure being totally demolished or severely damaged while a neighboring structure is left intact. Excessive wind damage is sporadic and these high winds are short lived and unpredictable. Therefore, this phenomenon is often not measured at monitoring stations nearest the property. Direct observation is rare, since occupants are either gone or inside. Also, note that adjacent buildings channel winds between the homes and

may also accelerate wind velocity. Accordingly, new damage is the best indicator of this wind force.

*National Lloyds* recognized that insurance claims are unique due to the "many variables associated with a particular claim, such as when the claim was filed, the condition of the property at the time of filing (including the presence of any preexisting damage), and the type and extent of damage inflicted by the covered event." *Id*. The Jameses argued to the trial court that they were seeking information regarding wind speed and direction to support their experts' opinions, but their experts did not rely on this evidence in their reports so the requested discovery would, at best, merely bolster their opinion testimony. In other words, when Relators challenged the reliability of the methodology of Jameses' experts, the Jameses requested additional discovery hoping that they could scour claim files in hopes of finding similarly situated claimants. *See id.*

The trial court abused its discretion by ordering discovery of irrelevant information. *See id.* at 488; *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding); *In re GMAC Direct Ins. Co.*, No. 09-10-00493-CV, 2010 WL 5550672, at *1 (Tex. App.—Beaumont Dec. 30, 2010, orig. proceeding). Furthermore, an overbroad request for irrelevant information is improper without regard to whether the request is also burdensome. *In re Allstate Cnty. Mut. Ins. Co.*, 227 S.W.3d at 670. Because we have sustained Relators' complaint that the

4

trial court abused its discretion by ordering overbroad discovery, we need not address their additional complaint that the discovery order is unduly burdensome.

We are confident that the trial court will vacate its order compelling discovery and the writ of mandamus shall issue only if the trial court fails to comply with this opinion.

PETITION CONDITIONALLY GRANTED.


PER CURIAM


Submitted on October 6, 2016
Opinion Delivered November 3, 2016

Before Kreger, Horton, and Johnson, JJ.